CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 09 2017

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 7:11CR00021 |
| v. | ) | |
| | ) | |
| STEVE EDWARD GROGANS, | ) | |
| | ) | **By:** Michael F. Urbanski |
| Petitioner. | ) | United States District Judge |

## MEMORANDUM OPINION

Petitioner Steve Edward Grogans brings this habeas corpus petition pursuant to 28 U.S.C. § 2255, asking the court to vacate or correct his sentence in light of the United States Supreme Court's recent decision in Johnson v. United States, 135 S. Ct. 2551 (2015). ECF Nos. 88 & 91. The government has moved to dismiss Grogans' § 2255 motion, ECF No. 94, and Grogans has responded. ECF No. 95. For the reasons that follow, the court will **GRANT** Grogans' § 2255 motion and **DENY** the United States' motion to dismiss.[1]

## I.

On August 8, 2011, a criminal judgment was entered sentencing Grogans to a term of 300 months of incarceration for possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1).[2] Because the court determined that Grogans had three or more qualifying convictions under the Armed Career Criminal Act (the "ACCA"), he was subject to 18 U.S.C. § 924(e)'s mandatory minimum sentence of 180 months, rather than the 120-month maximum sentence otherwise authorized under § 924(a)(2). The court calculated the sentencing guideline range as being 180 to 210 months but varied upwards to 300 months

---

[1] This case will be set down for resentencing.
[2] The court further stated that the 300-month term was to run consecutively with Grogans' imprisonment under any previous state sentence.

based on the "criminal behavior that spanned across defendant's life." ECF No. 36; see also Sent. Tr., ECF No. 46.

The court enhanced Grogans' sentence under § 924(e) based on convictions listed in seven paragraphs of the Presentence Investigation Report ("PSR"): Paragraphs 27, 28, 29 and 30, reflecting four 1984 convictions for Virginia statutory burglary;[3] Paragraphs 31 and 32, reflecting two 1987 convictions for Virginia statutory burglary; and Paragraph 34, a 1993 conviction for Virginia statutory burglary.[4] Grogans made no objection to the PSR. Grogans appealed his 300-month sentence, but his criminal judgment was affirmed on appeal. ECF No. 48.

On November 4, 2013, Grogans filed his first motion to vacate his sentence under 28 U.S.C. § 2255, alleging in part that his counsel provided ineffective assistance by failing to object to the use of his previous state convictions for ACCA enhancement purposes. The court denied this motion, ECF No. 61, and it was affirmed on appeal, ECF No. 82.

On June 24, 2016, Grogans filed an application with the Fourth Circuit Court of Appeals for leave of court to file a second or successive petition under 28 U.S.C. § 2255. The motion was granted by the Fourth Circuit on July 7, 2016, and his petition was filed that day in district court. ECF No. 91.

The issue now facing this court is whether, following the decisions of the United States Supreme Court in Johnson v. United States, 135 S. Ct. 2551 (2015), and Welch v.

---

[3] While three of Grogans' statutory burglary convictions were entered by the Botetourt County Circuit Court on August 24, 1984, they are considered as separate crimes for ACCA purposes because they were "committed on occasions different from one another." 18 U.S.C. § 924(e)(1); ECF No. 38, ¶¶ 27-29.

[4] In paragraph 18, the PSR lists the qualifying predicate convictions as those referenced in paragraphs 28, 29, 30, 31, 32, 33 and 35. ECF No. 38. However, the court made clear that it relied on paragraphs 27, 28, 29, 30, 31, 32, and 34 as predicates for the § 924(e) enhancement. See ECF No. 36, 46.

2

<u>United States</u>, 136 S. Ct. 1257 (2016), Grogans' ACCA enhancement for his prior convictions remains lawful.

II.

Under 28 U.S.C. § 2255, a federal inmate may move the sentencing court to vacate, set aside, or correct the prisoner's sentence. Courts may afford relief where "the sentence was imposed in violation of the Constitution or the laws of the United States." <u>Id.</u> § 2255(a). If the court determines the sentence was unlawfully imposed, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." <u>Id.</u> § 2255(b).

A convicted felon found guilty of possessing a firearm faces a maximum sentence of 120 months. 18 U.S.C. § 924(a)(2). However, the ACCA provides for a mandatory minimum sentence of 180 months when a defendant was previously convicted of at least three prior serious drug offenses or violent felonies. <u>Id.</u> § 924(e)(1). A violent felony is defined as:

> [A]ny crime punishable by imprisonment for a term exceeding one year . . . that –
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> (ii) is burglary, arson, or extortion, involves use of explosives, ~~or otherwise involves conduct that presents a serious potential risk of physical injury to another. . . .~~

<u>Id.</u> § 924(e)(2)(B) (strikeout added).

In 2015, the Supreme Court invalidated the language stricken above after finding it void for vagueness. <u>Johnson v. United States</u>, 135 S. Ct. 2551 (2015) ("<u>Johnson II</u>").[5] Though often parsed into three clauses—the force clause, the enumerated clause, and the residual

---

[5] The court refers to the 2015 <u>Johnson</u> decision as "<u>Johnson II</u>" to distinguish it from the Supreme Court's earlier decision in <u>Johnson v. United States</u>, 559 U.S. 133 (2010), concerning the force clause of § 924(e).

3

clause—§ 924(e)(2)(B) is comprised of two numbered subsections. See Begay v. United States, 553 U.S. 137, 142-44 (2008). Specifically, the first subsection states:

> (i)  has as an element the use, attempted use, or threatened use of physical force against the person of another; or

18 U.S.C. § 924(e)(2)(B) ("Subsection (i)"). The second subsection states:

> (ii)  is burglary, arson, or extortion, involves use of explosives, ~~or otherwise involves conduct that presents a serious potential risk of physical injury to another~~. . . .

Id. ("Subsection (ii)"). Subsection (ii)—the only part of the statute at issue in Grogans' claim—lists several specific "enumerated offense" crimes—burglary, arson, extortion, and use of explosives—that amount to violent felonies. Subsection (ii) goes on to encompass any crime that "otherwise involves conduct that presents a serious potential risk of injury."

The second portion of Subsection (ii)—the part of the statute deemed unconstitutional in Johnson II—is often called the "residual clause." The residual clause refers to crimes that are "similar to the listed examples in some respects but different in others—similar, say, in respect to the degree of risk it produces, but different in respect to the 'way or manner' in which it produces that risk." Begay, 553 U.S. at 144. Accordingly, a crime, for ACCA purposes, cannot qualify as both an enumerated offense and as a residual offense. Id. A contrary interpretation would read the word "otherwise" out of Subsection (ii). Id. Rather, a predicate conviction is an enumerated offense, a residual offense similar to an enumerated offense, or neither. This understanding of § 924(e) was confirmed in James v. United States, 550 U.S. 192 (2007), and aligns with the court's conclusion in this case.

In James, the Supreme Court determined that neither attempted burglary nor Florida's burglary statute was properly considered as an enumerated offense under

4

Subsection (ii). Id. at 212-13. This is so because, as explained below, the enumerated offense of burglary has been defined by the Supreme Court in a manner that is incongruous with the way many states have written their burglary statutes. Because Florida's version of burglary and attempted burglary did not fall within the definition of generic burglary, but posed a degree of risk similar to the ACCA's enumerated version of burglary, the government could rely "on the residual provision of [Subsection (ii)], which—as the Court has recognized—can cover conduct that is outside the strict definition of, but nevertheless similar to, generic burglary." Id.

Thus, when the Court struck down the ACCA's residual clause in Johnson II, the ACCA enhancement applied in James, based solely on the residual clause, fell as well.[6] 135 S. Ct. at 2563 ("We hold that imposing an increased sentence under the residual clause of the Armed Career Criminal Act violates the Constitution's guarantee of due process. Our contrary holdings in James and [United States v.] Sykes, [564 U.S. 1 (2011),] are overruled. Today's decision does not call into question application of the Act to the four enumerated offenses, or the remainder of the Act's definition of a violent felony.").

Whether the Virginia crime of statutory burglary falls within the enumerated clause portion or the residual clause portion of Subsection (ii) is dispositive in determining whether Johnson II reaches Grogans' conviction under the ACCA. Because the court determines that Virginia statutory burglary—now and since Taylor v. United States, 495 U.S. 575 (1990), was decided—does not qualify as one of the enumerated offenses in Subsection (ii) of

---

[6] The fact that Johnson II struck down the ACCA enhancement in James, founded as it was solely on the residual clause, does not affect the validity of the reasoning in James addressed above, that the Florida burglary and attempted burglary statutes fell outside the enumerated clause.

5

§ 924(e)(2)(B), Grogans' claim is both timely and procedurally proper, and his enhanced sentence is unlawful in light of Johnson II.

## III.

The federal habeas corpus statute under which Grogans seeks relief, 28 U.S.C. § 2255(f), contains a one-year statute of limitations. The government argues that Grogans' habeas petition is untimely as it was not filed within one year of the date his judgment became final. 28 U.S.C. § 2255(f)(1). Grogans contends that his petition was timely filed pursuant to § 2255(f)(3), as he filed it within one year of the Supreme Court's decision in Johnson II. Under § 2255(f)(3), the one-year statute of limitations period begins on "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactive applicable to cases on collateral review." In Welch, the Supreme Court held that its decision in Johnson II announced a new substantive rule that has retroactive effect in cases on collateral review.

The government responds that Johnson II has nothing to do with Grogans' case. Grogans was convicted of seven Virginia burglaries, which the government contends were enumerated offenses under the ACCA, and Johnson II expressly held that it had no effect on the operation of the enumerated clause.

Because, as explained below, statutory burglary in Virginia is broader than Taylor's definition of generic burglary, Grogans' convictions properly could have been deemed ACCA violent felonies only by way of the residual clause. Grogans' residual clause enhancement was not subject to attack until Johnson II was decided, after which he had one year to file his § 2255 claim. Grogans filed his motion to file a second or successive § 2255

6

petition with the Fourth Circuit on June 24, 2016, less than one year after <u>Johnson II</u> was decided.[7] As such, Grogans' petition meets the one-year period of limitation in § 2255(f).

## IV.

The government next argues that Grogans' claim is procedurally defaulted because he did not previously preserve the issue. Grogans argues that default does not bar consideration of his <u>Johnson II</u> claim because he satisfies the cause and prejudice standard under Supreme Court precedent.

Generally speaking, a petitioner cannot raise an argument in a post-conviction proceeding that he did not raise earlier on direct appeal. <u>See, e.g.</u>, <u>Sanchez-Llamas v. Oregon</u>, 548 U.S. 331, 351 (2006) (citing <u>Massaro v. United States</u>, 538 U.S. 500, 504 (2003), and <u>Bousley v. United States</u>, 523 U.S. 614, 621 (1998)). However, courts may excuse procedural default where a defendant is able to demonstrate "'cause' and actual 'prejudice.'" <u>Bousley</u>, 523 U.S. at 622 (citing <u>Murray v. Carrier</u>, 477 U.S. 478, 485 (1986), and <u>Wainwright v. Sykes</u>, 433 U.S. 72, 87 (1977)).

For the same reason that Grogans' claim is timely, he meets the cause requirement of procedural default. In short, because he could not challenge his sentence under the ACCA until <u>Johnson II</u> was decided, cause exists.

In <u>Murray</u>, the Supreme Court noted that cause, as could excuse procedural default, requires "some objective factor external to the defense [that] impeded counsel's efforts to comply" with the procedural requirements to raise a claim. 477 U.S. at 488. While <u>Murray</u> did not provide "an exhaustive catalog of such objective impediments," it noted "that a

---

[7] <u>Johnson II</u> was decided on June 26, 2015.

7

showing that the factual or legal basis for a claim was not reasonably available to counsel" could constitute the required objective impediment. Id. (citing Reed v. Ross, 468 U.S. 1, 16 (1984)). Reed holds that cause is established "where a constitutional claim is so novel that its legal basis is not reasonably available to counsel." 468 U.S. at 16. In that discussion, Reed described three examples of such novelty:

> First, a decision of this Court may explicitly overrule one of our precedents. Second, a decision may overtur[n] a longstanding and widespread practice to which this Court has not spoken, but which a near-unanimous body of lower court authority has expressly approved. And, finally, a decision may disapprov[e] a practice this Court arguably has sanctioned in prior cases.

Id. at 17 (brackets in original) (internal quotation marks and citations omitted). Reed noted that when a case falls into one of the first two categories and is given retroactive effect, "there will almost certainly have been no reasonable basis upon which an attorney previously could" have made the defaulted argument. Id. "Consequently, the failure of a defendant's attorney to have pressed such a claim before a state court is sufficiently excusable to satisfy the cause requirement." Id.

Until the Supreme Court overruled James in Johnson II, Grogans had no ability to raise a challenge to his ACCA conviction. The James Court rejected a suggestion raised by Justice Scalia's dissent that the residual clause was unconstitutionally vague. "While ACCA requires judges to make sometimes difficult evaluations of the risks posed by different offenses, we are not persuaded by Justice Scalia's suggestion—which was not pressed by James or his amici—that the residual [clause] is unconstitutionally vague." James, 550 U.S. at 210 n.6. Between James and Johnson II, the Court continued to consider the application of the residual clause to a variety of state crimes, effectively precluding any constitutional

8

challenge to it. See Sykes, 564 U.S. at 12-16; Chambers v. United States, 555 U.S. 122, 127-30 (2009); Begay, 553 U.S. at 145-48. The court thus finds that the legal basis for Grogans' claim was not reasonably available to him before Johnson II was decided, establishing the cause element excusing his procedural default.

In reaching this conclusion, the court distinguishes the novelty of the challenge made available only after Johnson II was decided with the frequently litigated issue facing the Court in Bousley, upon which the government relies, as to whether mere possession of a firearm constituted use under 18 U.S.C. § 924(c)(1). There the Court noted that:

> The argument that it was error for the District Court to misinform petitioner as to the statutory elements of § 924(c)(1) was most surely not a novel one. Indeed, at the time of petitioner's plea, the Federal Reporters were replete with cases involving challenges to the notion that "use" is synonymous with mere "possession."

Bousley, 523 U.S. at 622 (internal citations omitted). To support its holding that futility cannot constitute cause, the Bousley court quoted Engle v. Isaac, 456 U.S. 107, 130 n.35 (1982), for the proposition that "futility cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at that particular time.'" But this case is a far cry from Engle. There the defendants did not object to a jury instruction that required the defendant in an Ohio murder case to prove self-defense. The Court noted that its decision in In re Winship, 397 U.S. 358 (1970), decided four and one-half years before the first of defendants' criminal trials, "laid the basis for their constitutional claim," that the prosecution should bear the burden of disproving an affirmative defense. Engle, 456 U.S. at 131. "Where the basis of a constitutional claim is available, and other defense counsel have perceived and

9

litigated that claim, the demands of comity and finality counsel against labeling alleged unawareness of the objection as cause for procedural default." Id. at 134.[8]

Nor does this case resemble the circumstances facing the Fourth Circuit in United States v. Pettiford, 612 F.3d 270 (4th Cir. 2010). There, defendant had at the time of sentencing a basis to challenge two of his predicate convictions, yet chose not to do so. Nothing about Pettiford's subsequent habeas challenge to those convictions concerned the situation presented here, where the claim springs from a novel change of law made retroactive by the Supreme Court on collateral review. In short, while the circumstances establishing cause in Reed were not available to Pettiford, they exist here.

The government likewise argues that the Fourth Circuit's opinion in United States v. Mikalajunas, 186 F.3d 490 (4th Cir. 1999), supports a finding of no cause here. As with Pettiford, however, Mikalajunas did not involve a right newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review. Rather, it concerned an argument on an unsettled area of law which counsel either did not recognize or chose not to pursue at sentencing. Id. at 493.

Unlike the circumstances in Bousley, Engle, Pettiford, and Mikalajunas, the bolt of lightning from the clear blue sky that struck down the residual clause in Johnson II was so novel that it was not reasonably available to counsel. As such, it constitutes cause to excuse procedural default.

Grogans also easily meets the prejudice requirement. To show prejudice, a petitioner need show only that without an error, the proceedings would have been different. Strickler v.

---

[8] The Court in Reed expressly distinguished the factual setting of Engle for the same reason. Reed, 468 U.S. at 19-20.

Case 7:11-cr-00021-MFU-RSB   Document 97   Filed 03/09/17   Page 10 of 28   Pageid#: 474

Greene, 527 U.S. 263, 289 (1999). In this case, had the sentencing court not applied the ACCA enhancement, Grogans' statutory maximum penalty on Count One would have been only 120 months, as opposed to the 300-month sentence he received following enhancement under the ACCA. Plainly, Grogans has established that the alleged error in his sentence worked to his actual and substantial disadvantage sufficient to establish prejudice. United States v. Frady, 456 U.S. 152, 170 (1982).

Accordingly, the court concludes that Grogans' petition is not barred as untimely or procedurally defaulted.

## V.

Before turning to the crime of Virginia statutory burglary at issue here, it is necessary to set the analytical stage. The categorical and modified categorical approaches—the only analytical tools district courts wield to determine whether prior convictions amount to violent felonies under the ACCA—were forged in Taylor, 495 U.S. at 600-01. See Mathis v. United States, 136 S. Ct. 2243, 2251 (2016) ("Taylor set out the essential rule governing ACCA cases more than a quarter century ago. All that counts under the Act, we held then, are 'the elements of the statute of conviction.'"). Thus, since Taylor, courts must begin with the statute of conviction's elements to determine if it aligns with the generic offense.

As to the variant of the categorical approach known as the "modified categorical approach," the Supreme Court allows sentencing courts to consult a limited class of documents to determine which of the alternative crimes within a statute a defendant was convicted. See Shepard v. United States, 544 U.S. 13, 26 (2005) ("We hold that enquiry under the ACCA to determine whether a plea of guilty to burglary defined by a nongeneric statute

11

necessarily admitted elements of the generic offense is limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information.").

The Supreme Court has recently twice reversed courts that have misused this approach and improperly consulted Shepard documents to glean facts related to underlying convictions. See Mathis, 136 S. Ct. 2243; Descamps v. United States, 133 S. Ct. 2276 (2013). Both Mathis[9] and Descamps[10] make clear that they are neither changing nor supplementing the modified categorical approach, merely correcting courts that have misapplied Taylor.

---

[9] Mathis stated:

> "[T]he only [use of that approach] we have ever allowed," we stated a few Terms ago, is to determine "which *element[s]* played a part in the defendant's conviction." Descamps, 570 U.S., at ——, ——, 133 S. Ct., at 2283, 2285 (emphasis added); see Taylor, 495 U.S., at 602, 110 S. Ct. 2143 (noting that the modified approach may be employed only to determine whether "a jury necessarily had to find" each element of generic burglary).

136 S. Ct. at 2253 (brackets in original).

[10] Descamps stated the following:

> Our caselaw explaining the categorical approach and its "modified" counterpart all but resolves this case. In those decisions, as shown below, the modified approach serves a limited function: It helps effectuate the categorical analysis when a divisible statute, listing potential offense elements in the alternative, renders opaque which element played a part in the defendant's conviction. So understood, the modified approach cannot convert Descamps' conviction under § 459 into an ACCA predicate, because that state law defines burglary not alternatively, but only more broadly than the generic offense.
>
> . . .
>
> Taylor recognized a "narrow range of cases" in which sentencing courts—applying what we would later dub the "modified categorical approach"—may look beyond the statutory elements to "the charging paper and jury instructions" used in a case. Id., at 602, 110 S. Ct. 2143.
>
> . . .
>
> Hence Taylor permitted sentencing courts, as a tool for implementing the categorical approach, to examine a limited class of documents to determine which

12

In <u>Descamps</u>, the Supreme Court reversed the Ninth Circuit Court of Appeals'
conclusion that district courts could apply the modified categorical approach to California's
burglary statute. 133 S. Ct. at 2293. The Court emphasized that <u>Taylor</u> only allowed
application of the modified categorical approach to the "kind of statute [that] sets out one
or more elements of the offense in the alternative." <u>Id.</u> at 2281. Where

> one alternative (say, a building) matches an element in the
> generic offense, but the other (say, an automobile) does not, the
> modified categorical approach permits sentencing courts to
> consult a limited class of documents, such as indictments and
> jury instructions, to determine which alternative formed the
> basis of the defendant's prior conviction.

<u>Id.</u> The Supreme Court explained that the district court and the court of appeals improperly
applied the modified categorical approach to a statute that was simply broader than generic
burglary, rather than comprised of multiple crimes. <u>Id.</u> at 2287-91. The Court emphasized
that consultation of <u>Shepard</u> documents is only appropriate to determine which of the
alternate crimes within a statute the defendant was convicted, not to glean the actual facts
giving rise to the conviction. <u>Id.</u> In <u>Descamps</u>, facts showing the defendant's actions were
within the bounds of generic burglary were irrelevant because California's burglary statute
was overbroad, as it encompassed both lawful and unlawful entry with the intent to commit
a crime. <u>Id.</u> at 2288-89. Where underlying crimes categorically are not violent felonies,
district courts are precluded from using the modified categorical approach to determine
whether the underlying convictions happen to fall within the generic offense. <u>Id.</u>

---

of a statute's alternative elements formed the basis of the defendant's prior
conviction.

133 S. Ct. at 2283-84.

Mathis, the Supreme Court's most recent opinion on the modified categorical approach, again reversed a decision that violated Taylor's instruction. 136 S. Ct. at 2257. In Mathis, the Court addressed the divisibility of statutes. Id. at 2248-50. Divisible statutes are those that include differing, alternative elements that must be proven to sustain a conviction. Id. Such statutes allow use of the modified categorical approach as they include multiple crimes. Id. However, statutes that merely contemplate alternative means of accomplishing a single crime are not divisible. Id. Rather, such statutes remain indivisible and, under Taylor, are subject only to a purely categorical analysis. Id.[11]

Mathis addressed Iowa's burglary statute which encompassed unlawful entry of "any building, structure, or land, water, or air vehicle." Id. at 2250 (emphasis and brackets omitted) (quoting Iowa Code § 702.12). After consulting case law from Iowa's highest court, the Supreme Court concluded that the locations listed in the statute were alternate means of

---

[11] Consistently, in a series of recent opinions, the Fourth Circuit Court of Appeals has "explained this Circuit's approach to divisibility analysis with unmistakable clarity." United States v. Barcenas-Yanez, 826 F.3d 752, 757 (4th Cir. 2016).

> A statute is indivisible when the jury need not agree on anything past the fact that the statute was violated. Any statutory phrase that—explicitly or implicitly—refers to multiple, alternative means of commission must still be regarded as indivisible if the jurors need not agree on which method of committing the offense the defendant used. Thus, mere use of the disjunctive "or" in the definition of a crime does not automatically render it divisible. Only when [the] law requires that in order to convict the defendant the jury must unanimously agree that he committed a particular substantive offense contained within the disjunctively worded statute are we able to conclude that the statute contains alternative elements and not alternative means.

United States v. Fuertes, 805 F.3d 485, 498 (4th Cir. 2015) (brackets in original); see also United States v. Vinson, 805 F.3d 120, 125 (4th Cir. 2015) ("[W]hether a statute or criminal offense is divisible depends on the existence of alternate elements and a matching category—that is, the alternate elements must create at least one category or form of an offense that matches up to the elements of the generic federal offense in question."); United States v. Cabrera-Umanzor, 728 F.3d 347, 350 (4th Cir. 2013) ("Where the statute defines the offense broadly rather than alternatively, the statute is not divisible, and the modified categorical approach simply 'has no role to play.'" (quoting Descamps, 133 S. Ct. at 2285)); United States v. Dozier, No. 15-4532, 2017 WL 395098, at *10-11 (4th Cir. Jan. 30, 2017) ("Although it is 'understandably tempting to examine Shepard-approved documents earlier rather than later in the sentencing process,' examination of these documents should only occur when the relevant statute is properly deemed divisible." (quoting Barcenas-Yanez, 826 F.3d at 757-58)).

14

fulfilling the locational element. Id. Such alternate means did not permit use of the modified categorical approach and rendered the statute overbroad under the categorical approach. As will be explained, Mathis compels the same result here.

## VI.

Pursuant to Taylor, 495 U.S. at 600-01, the court first turns to Virginia's statutory framework to determine whether Grogans' offenses of conviction align with the generic burglary offense enumerated in the ACCA.

Virginia's most basic burglary statute, essentially codifying the common law, makes it unlawful for any person to "break and enter the dwelling house of another in the nighttime with intent to commit a felony or any larceny therein . . . ." Va. Code Ann. § 18.2-89.

The next two sections of Virginia's criminal code contain two versions of statutory burglary, expanding common law "burglary to include other structures." Allard v. Commonwealth, 480 S.E.2d 139, 142 (Va. Ct. App. 1997); see also Turner v. Com., 531 S.E.2d 619, 621 (Va. Ct. App. 2000) ("In enacting Code §§ 18.2-90 and -91, the legislature … modified the common law to safeguard both conventional dwelling houses and other specified structures."). The first iteration, found in Virginia Code § 18.2-90, has changed over the years. While Grogans' many statutory burglary convictions span a great number of those years, the minor differences in the statutes do not change the legal analysis or conclusion.[12] The version of the statute in force at the time of Grogans' most recent statutory burglary conviction in 1993 read as follows:

---

[12] For example, the version of Virginia Code § 18.2-90 in force at the time of Grogans' 1993 statutory burglary conviction differs from the version in force at the time of his 1987 convictions in that it includes manufactured homes. The 1993 version of the statute further differs from the version in force at the time of Grogans' first four statutory

§ **18.2-90. Entering dwelling house, etc., with intent to commit murder, rape or robbery.**—If any person in the nighttime enters without breaking or in the daytime breaks and enters or enters and conceals himself in a dwelling house or an adjoining, occupied outhouse or in the nighttime enters without breaking or at any time breaks and enters or enters and conceals himself in any office, shop, manufactured home, storehouse, warehouse, banking house, or other house, or any ship, vessel or river craft or any railroad car, or any automobile, truck or trailer, if such automobile, truck or trailer is used as a dwelling or place of human habitation, with intent to commit murder, rape or robbery, he shall be deemed guilty of statutory burglary, which offense shall be a Class 3 felony. However, if such person was armed with a deadly weapon at the time of such entry, he shall be guilty of a Class 2 felony.

A second statutory burglary statute made it illegal to break and enter with the intent to commit a felony other than murder, rape, or robbery. At the time of Grogans' statutory burglary conviction in 1993, the statute read as follows:[13]

§ **18.2-91. Entering dwelling house, etc., with intent to commit larceny, assault and battery or other felony.** — If any person commits any of the acts mentioned in § 18.2-90 with intent to commit larceny, assault and battery or any felony other than murder, rape or robbery, he shall be guilty of statutory burglary, punishable by confinement in a state correctional facility for not less than one or more than twenty years or, in the discretion of the jury or the court trying the case without a jury, be confined in jail for a period not exceeding twelve months or fined not more than $2,500, either or both. However, if the person was armed with a deadly weapon at the time of such entry, he shall be guilty of a Class 2 felony.

Grogans' PSR does not indicate under which section of the Virginia Code his statutory burglary convictions fell. However, summaries of Grogans' convictions contained on the

---

burglary convictions in 1984 in that it includes the language "enters and conceals." Neither of these differences is material for purposes of the court's analysis.

[13] This version of Virginia Code § 18.2-91 differs slightly from the one in place at the time of Grogans' 1984 and 1987 convictions, in that it references assault and battery and provides for a $2,500 fine rather than the $1,000 fine set forth in the previous version of the statute. Neither of these differences affects the court's analysis.

Virginia Courts Case Information Service or copies of his state court conviction records obtained from Probation indicate that they were violations of Virginia Code § 18.2-91.[14]

As evident from the statutory language, all of these Virginia burglary statutes share three common elements: (1) an unlawful or unprivileged entry; (2) into a covered location; and (3) with the intent to commit a crime.[15]

## A.

In Taylor, 495 U.S. at 598, the Supreme Court defined generic burglary—burglary that qualifies as a violent felony under the enumerated clause of the ACCA—as "an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." In so holding, the Court noted that state crimes that allowed for burglary of places other than buildings, such as automobiles, swept more broadly than generic burglary, and were thus excluded from the definition of generic burglary. Id. at 591. As the Fourth Circuit recently explained in United States v. White, 836 F.3d 437, 445 (4th Cir. 2016) (ellipsis in original) (parallel citations omitted):

> Generic burglary's "building or other structure" element does not encompass every enclosure. For example, in Shepard v. United States, 544 U.S. 13, 15-16 (2005), the Supreme Court stated that the generic offense refers to burglary "committed in a building or enclosed space . . . not in boat or motor vehicle." Similarly, the Supreme Court recently found an Iowa burglary statute to encompass conduct outside the bounds of generic burglary because the statute specified that the crime could occur in a "land, water, or air vehicle." Mathis, 136 S. Ct. at 2250 (quoting Iowa Code § 702.12 (2013)); see also Taylor, 495 U.S.

---

[14] Grogans' 1993 statutory burglary conviction is listed on the Virginia Courts Case Information Service, which may be accessed at http://ewsocis1.courts.state.va.us. Probation provided copies of Grogans' state court conviction records from 1984 and 1987, which the court has docketed at ECF No. 96.

[15] A fourth Virginia burglary statute, § 18.2-92, not applicable here, also shares these elements and makes it unlawful to break and enter into an occupied dwelling with the intent to commit other misdemeanors. See Johnson v. Commonwealth, 444 S.E.2d 559, 561-62 (Va. Ct. App. 1994).

at 599 (describing a state burglary offense that prohibited breaking and entering "any booth or tent, or any boat or vessel, or railroad car" as nongeneric burglary (quoting Mo. Rev. Stat. § 560.070 (1969) (repealed))).

Common law burglary, as codified in Virginia Code § 18.2-89, limits the locational element of § 18.2-89 to dwelling houses. As such, it squarely falls within Taylor's definition of generic burglary and qualifies as a violent felony under § 924(e).

The next two versions of statutory burglary, Virginia Code §§ 18.2-90 and 18.2-91, share two elements—unlawful or unauthorized entry and location—and differ only as to the intent necessary to violate the statute. As in Mathis, the issue here is whether the locational element of Virginia statutory burglary as set forth in Virginia Code § 18.2-90 is broader than generic burglary.[16]

When viewed through the lens of the categorical approach, there is no doubt that Virginia Code § 18.2-90 sweeps more broadly than Taylor's definition of generic burglary. For example, the version of § 18.2-90 in force at the time of Grogans' offenses encompasses criminal activity that occurs in "any ship, vessel or river craft or any railroad car, or any automobile, truck or trailer, if such automobile, truck or trailer is used as a dwelling or place of human habitation." Such language categorically takes § 18.2-90 beyond generic burglary.

## B.

However, as noted above, where a statute consists of multiple crimes, some of which rise to the level of an ACCA violent felony and some of which do not, the court is permitted to apply the modified categorical approach. Before invoking the modified categorical

---

[16] While Grogans was convicted of violating Virginia Code § 18.2-91, that statute makes it unlawful to commit any of the acts mentioned in § 18.2-90, albeit with different intent. As such, the court's analysis must focus on § 18.2-90.

18

approach, the court must decide the threshold question of whether § 18.2-90 is divisible in a legally significant way. In this case, the principal question raised by the parties is whether the disjunctive list of locations contained in § 18.2-90 amounts to alternative elements constituting different crimes or merely multiple means of committing a single crime. If the statute describes multiple crimes, the court must then determine if any of the crimes amount to generic burglary and thus qualify as ACCA predicates. As the Fourth Circuit noted in United States v. Cabrera-Umanzor, 728 F.3d 347, 352 (4th Cir. 2013) (emphasis omitted) (ellipsis and first, fifth, and sixth brackets in original):

> General divisibility, however, is not enough; a statute is divisible for purposes of applying the modified categorical approach only if at least one of the categories into which the statute may be divided constitutes, by its elements, a crime of violence. See Descamps, 133 S. Ct. at 2285 (explaining that the modified categorical approach provides a "mechanism" for comparing the prior conviction to the generic offense "when a statute lists multiple, alternative elements, and so effectively creates several different crimes. . . . [and] at least one, but not all of those crimes matches the generic version" []); [United States v.] Gomez, 690 F.3d [194,] 199 [(4th Cir. 2012)] ("[C]ourts may apply the modified categorical approach to a statute only if it contains divisible categories of proscribed conduct, at least one of which constitutes—by its elements—a [qualifying conviction].").

The court concludes that Virginia Code § 18.2-90 does not create several different crimes. Rather, its locational element sets forth alternative places where the single crime of statutory burglary may be committed. There is no difference in statutory penalties for unlawful entry into the alternative locations listed in the statute. As such, Mathis requires that the court consider these alternative locations as means by which the singular crime of

19

statutory burglary may be committed, rather than elements of separate crimes. Accordingly, the court is not permitted to use the modified categorical approach.

## 1.

District courts must consult state law to determine whether a disjunctive list in a state statute amounts to means or elements. Mathis, 136 S. Ct. at 2256. A number of Virginia appellate decisions address whether certain places fall within the locations set forth in § 18.2-90, but none squarely answers the means/elements inquiry posed in Mathis. For example, in Dalton v. Commonwealth, 418 S.E.2d 563 (Va. Ct. App. 1992), the court addressed the question whether a fenced area that was used to store repaired lawnmowers was a storehouse as that term is used in the statute. Citing Compton v. Commonwealth, 190 Va. 48, 55 S.E.2d 446 (1949), concerning a chicken house; Graybeal v. Commonwealth, 228 Va. 736, 324 S.E.2d 698 (1985), concerning mobile homes or trailers used for resale or display; and Crews v. Commonwealth, 352 S.E.2d 1 (Va. Ct. App. 1987), concerning a school bus converted for storage, the Dalton court held that in order for a structure to be the subject of burglary, it must be affixed to the ground and have walls and a roof. The court has considered whether the requirement that a structure be affixed to the ground constitutes an element. But based on Mathis, the court does not read these cases to create separate crimes with separate elements. One does not commit a different crime under this statute by breaking into a storehouse as opposed to an office or a ship.[17] Rather, these are alternative places—or

---

[17] Many years ago, the Supreme Court of Virginia stated just that.

> Under Code, §§ 18-160 and 18-161 [predecessor burglary statutes], housebreaking or storebreaking, as a consummated crime, includes both a nighttime entry without breaking and a breaking and entry in the daytime or nighttime, under stated conditions, as precisely the same felony. There is no distinction in the degree or class of crime or in the measure of its punishment. (cont.)

20

"means" in <u>Mathis</u>' parlance—to commit the same crime. In other words, there is no elemental difference between burglary of a storehouse versus burglary of an office or ship. That is the teaching of <u>Mathis</u>.

<h2 style="text-align:center">2.</h2>

<u>Mathis</u>, of course, dealt with the Iowa burglary statute and determined that the places listed in the statute where burglary may occur amount to "brute facts" or "means" of committing a singular crime, rather than elements creating separate crimes. The Court gave weight to how Iowa courts viewed the various places listed in the statute, citing two cases, <u>State v. Duncan</u>, 312 N.W.2d 519, 523 (Iowa 1981), and <u>State v. Rooney</u>, 862 N.W.2d 367, 376 (Iowa 2015).

Vincent Duncan was charged with committing one count of Iowa second degree burglary. The first question considered by the Iowa Supreme Court was whether Duncan could be charged with burglary as to a marina and a boat located therein in a single count. The court held "that the occasion involving burglary of the marina and the boat could be charged as one burglary consisting of the marina and boat conjunctively or alternatively and could be correspondingly submitted to the jury." <u>Duncan</u>, 312 N.W.2d at 523. As to whether the jury must agree on whether the marina was burgled as opposed to the boat, the Iowa court stated:

> At this point another principle intervenes. "It is not necessary that a jury, in order to find a verdict, should concur in a single view of the transaction disclosed by the evidence. If the conclusion may be justified upon either of two interpretations of the evidence, the verdict cannot be impeached by showing that a part of the jury proceeded upon one interpretation and

<u>Willoughby v. Smyth</u>, 194 Va. 267, 271, 72 S.E.2d 636, 638 (1952).

21

part upon another." People v. Sullivan, 173 N.Y. 122, 127, 65 N.E. 989, 989 (1903). Stated differently, "(I)f substantial evidence is presented to support each alternative method of committing a single crime, and the alternatives are not repugnant to each other, then unanimity of the jury as to the mode of commission of the crime is not required." State v. Arndt, 12 Wash. App. 248, 252, 529 P.2d 887, 889 (1974). See also 75 Am. Jur. 2d Trial § 884, at 760 (1974) ("A conviction will not be set aside because of an instruction which permits a conviction notwithstanding a difference between jurors as to which of two contradictory facts, each consistent with guilt, is established by the evidence."); Annot., 72 A.L.R. 154 (1931).

Id. at 523-24.

Rooney involved burglary of a condemned house scheduled for demolition. The Supreme Court of Iowa, addressing the locational aspect of the Iowa burglary statute, stated, "It is true that the legislature has broadly phrased the element of place and we, as a result, have found the element satisfied in a wide variety of contexts." 862 N.W.2d at 376. The same is true in Virginia.

Indeed, an examination of the Iowa and Virginia decisions concerning the place or locational element of each state's statute yields no material difference, suggesting that the Mathis Court's conclusion as to Iowa applies to Virginia as well. For example, compare the Iowa decision in State v. Hill, 449 N.W.2d 626, 628 (Iowa 1989), with the Virginia decision in Dalton, 418 S.E.2d at 563. Hill was convicted of stealing pistons from a fenced enclosure behind an auto parts store. The Iowa court considered whether the fenced enclosure fell within the definition of an appurtenance under the Iowa statute. Just as the Virginia court in Dalton decided that the fenced area containing lawnmowers fell within the definition of a storehouse under the Virginia statute, the Iowa court in Hill determined that the fenced area containing pistons fell within the definition of an appurtenance under the Iowa statute.

22

Because these Virginia and Iowa decisions so closely track each other as to the proof required to satisfy the locational element, it stands to reason that the conclusion of the Mathis Court that the list of locations contained in the Iowa burglary statute are best considered as "brute facts" or "means," rather than elements, applies as well in Virginia.

## 3.

The Supreme Court of Virginia's decision in Graybeal v. Commonwealth, 228 Va. 736, 324 S.E.2d 698 (1985), provides an instructive contrast. Graybeal concerned whether the final portion of the list of locations in Virginia Code § 18.2-90—"any automobile, truck or trailer"—contains an added proof requirement. Specifically, Graybeal makes it clear that to sustain a conviction for breaking and entering into an automobile, truck, or trailer under § 18.2-90, the statute provides that the prosecution had to meet the requirements of the statute and prove that the trailer was used as a dwelling or place of human habitation. Id. at 739, 324 S.E.2d at 699; see Allard, 480 S.E.2d at 142 ("With respect to structures other than the dwelling house of another, the legislature specifically chose to impose the habitability element only for automobiles, trucks or trailers."). Thus, Graybeal commands the conclusion that breaking and entering an automobile, truck, or trailer is not merely an alternative means of violating § 18.2-90. Rather, a burglary conviction under § 18.2-90 for breaking and entering an automobile, truck, or trailer requires additional proof—use as a dwelling or place of human habitation—not applicable to other locations listed in the statute. But that difference is of no consequence to the court's conclusion that the ACCA enhancement does not apply. Burglaries of automobiles, trucks, or trailers clearly do not align with generic burglary. See Turner, 531 S.E.2d at 621 ("Code §§ 18.2-90 and 18.2-91 expand traditional

burglary to … safeguard both conventional dwelling houses and other specified structures."). The remainder of § 18.2-90 encompasses burglaries of ships, vessels, and railroad cars, among other structures. Thus, the locales subject to burglary in § 18.2-90 and described in Graybeal—those that require proof of use as a dwelling or for human habitation and those that do not—both are categorically broader than generic burglary. As such, the court cannot employ the modified categorical approach. Cabrera-Umanzor, 728 F.3d at 352.

The court is mindful of the Fourth Circuit's holding in United States v. Foster, 662 F.3d 291 (4th Cir. 2011). In Foster, the Fourth Circuit determined that § 18.2-90 was divisible into three clauses:

> The relevant Virginia statute defined breaking and entering as a crime under three separate clauses: (1) an "office, shop . . . storehouse, warehouse, banking house, or other house"; (2) a "ship, vessel, or river craft or any railroad car"; or (3) "any automobile, truck, or trailer . . . [being] used as a dwelling or place of human habitation." Va. Code § 18.2–90 (1992) (amended 2004).

Id. at 293-94 (brackets and ellipses in original). After considering Graybeal's holding that convictions under the third clause required an added proof requirement, the Fourth Circuit concluded that it could employ the modified categorical approach to determine which of the three clauses was invoked in the underlying conviction. Id. at 294-95. But Foster was decided before Descamps and Mathis were decided, and the Court's subsequent decisions in Descamps and Mathis strongly counsel against use of the modified categorical approach here.

This conclusion is bolstered by the Fourth Circuit's more recent decision in United States v. Henriquez, 757 F.3d 144 (4th Cir. 2014). In Henriquez, the Fourth Circuit held that

first degree Maryland burglary was broader than generic burglary and thus was not a proper predicate to support a sentencing enhancement under United States Sentencing Guidelines § 2L1.2(b)(1)(A)(ii). Although the Maryland statute in question limited burglary to breaking and entering "the dwelling of another with the intent to commit theft or a crime of violence," Md. Code Ann. Crim. Law § 6-202(a), the Fourth Circuit found there to be "a realistic probability that Maryland's statute covers burglaries of motor vehicles or boats—places that the United States Supreme Court has expressly excluded from generic burglary." Henriquez, 757 F.3d at 146. The Fourth Circuit in Henriquez "employ[ed] the categorical approach here because the crime of which the defendant was convicted has a single, indivisible set of elements." Id. at 147 (internal quotation marks omitted) (quoting Descamps, 133 S. Ct. at 2282).[18] The court's decision also finds support in the Seventh Circuit's post-Mathis decision in United States v. Edwards, 836 F.3d 831, 838 (7th Cir. 2016), where the Seventh Circuit found the list of locations in the Wisconsin burglary statute to be "alternative means rather than elements and . . . therefore indivisible." But see United States v. Gundy, 842 F.3d 1156 (2016) (finding, by a divided panel of the Eleventh Circuit, that the Georgia burglary statute is divisible and applying the modified categorical approach).

Virginia Code § 18.2-90 is far broader than generic burglary. The most obvious examples of this overbreadth fall at the end of the list. Plainly, unlawful entry of automobiles, trucks, and trailers is broader than generic burglary. So, too, with unauthorized entry into ships, vessels, river craft, or any railroad car. While the part of the list that covers

---

[18] The Fourth Circuit in United States v. White, 836 F.3d 437, 444 (4th Cir. 2016), also recently used the categorical approach to analyze the application of § 924(e) to the West Virginia burglary statute. However, it declined to express an opinion as to whether the alternative locations specified in the West Virginia statute rendered it divisible for the purposes of applying the modified categorical approach as that issue was neither argued nor addressed by the parties in their briefs. Id. at 446 n.3.

various types of buildings falls within the bounds of generic burglary, <u>Mathis</u> does not permit the court to divide the statute into separate crimes based on those locales. Accordingly, the court cannot employ the modified categorical approach to determine the specific facts surrounding Grogans' convictions.[19]

4.

Although neither party raised the issue, the court has considered whether § 18.2-90 is divisible based on the time of day of the offense. That is because § 18.2-90 only encompasses breaking and entering or entering and concealing in a dwelling house or an adjoining, occupied outhouse *in the daytime* as opposed to breaking and entering or entering and concealing the other locations listed in the statute *at any time*.[20] In <u>Griffin v. Commonwealth</u>, 412 S.E.2d 709, 711 (Va. Ct. App. 1991), the court stated:

> Thus, whenever there is . . . intent, the timing of the offense is not an essential element of the offense. Since breaking and entering of a dwelling, at any time, is the essential element of the offense, the indictment's allegation that the offense occurred in the daytime is nothing more than surplusage.

Likewise, there is no merit to the argument, albeit unstated, that the term "dwelling house" used in the first part of the statute adds an element. Although the term "dwelling house" has been defined to mean a place human beings regularly use for sleeping, <u>Turner</u>,

---

[19] Near the end of the majority opinion, the <u>Mathis</u> Court suggests that "if state law fails to provide clear answers," federal judges may "peek at the record documents . . . for the sole and limited purpose of determining whether the listed items are elements of the offense." <u>Mathis</u>, 136 S. Ct. at 2256-57 (internal brackets and quotation marks omitted) (quoting <u>Rendor v. Holder</u>, 782 F.3d 466, 473-74 (9th Cir. 2015) (opinion dissenting from denial of rehearing en banc)). The record documents concerning Grogans' Virginia statutory burglary convictions that are available to the court fail to clarify this issue.

[20] Again, the minor differences in language between the version of the statute in force at the time of Grogans' 1984, 1987, and 1993 convictions do not affect its potential divisibility with respect to the time of day of the offense. See, <u>supra</u>, n.12.

531 S.E.2d at 621, <u>Griffin</u> holds that it is subsumed within the term "other house," as it "necessarily includes any such structure used as a dwelling." <u>Id.</u>

Accordingly, Virginia Code § 18.2-90, taken as a whole, has never qualified as a violent felony under the enumerated clause, as it does not square with generic burglary. Rather, Virginia Code § 18.2-90 has only qualified as an ACCA predicate by way of the now-defunct residual clause. As <u>Johnson II</u> and <u>Welch</u> make clear, federal inmates whose sentences were enhanced as a result of the residual clause are entitled to relief under § 2255.

## VII.

Because Grogans' Virginia burglary convictions—now and since <u>Taylor</u>—only qualify as predicate felonies by way of the residual clause, Grogans' claim is cognizable under <u>Johnson II</u> and his ACCA sentence on Count One must be vacated. In short, given the constraints of the categorical approach imposed by <u>Mathis</u>, the court cannot conclude that Grogans' prior statutory burglary convictions meet <u>Taylor</u>'s definition of generic burglary.[21] Pursuant to <u>Johnson II</u>, the court finds that the 300-month sentence Grogans received is unconstitutional, as it is greater than the 120-month maximum penalty set forth in § 924(a)(2). As such, Grogans' § 2255 motion is **GRANTED**, and the government's motion to dismiss **DENIED**.

---

[21] Given the difficulties inherent in deciphering the distinction between elements and means, the court views the analysis in this case to be anything but, in <u>Mathis</u> terms, "easy." 136 S. Ct. at 2256. Compare, for example, the <u>Descamps</u> Court's description of a divisible statute as being the kind of statute that "sets out one or more elements of the offense in the alternative—for example, stating that burglary involves entry into a building *or* an automobile," 133 S. Ct. at 2281, with the conclusion in <u>Mathis</u> that a similar list of places in the Iowa statute, "any building, structure, *[or] land, water or air vehicle*" "are not alternative elements, each going toward the creation of separate crimes." 136 U.S. at 2250 (brackets in original). At the end of the day, the court, bound by <u>Mathis</u>, is constrained to grant Grogans' petition. At the same time, the court shares the "general concern" explained by Judge Wilkinson in his concurring opinion in <u>United States v. Doctor</u>, 842 F.3d 306, 313 (4th Cir. 2016) "that the categorical approach to predicate crimes of violence is moving beyond what the Supreme Court originally anticipated."

27

An appropriate Order will be entered.

Entered: 03-09-2017

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge